JUL 2 5 2008

CLERK U.S. DISTRICT COURT
ALEXANDRIA VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GEORGE & COMPANY, LLC,    )
                          )
     Plaintiff,           )
                          )
v.                        )        1:07cv498 (LMB/TRJ)
                          )
IMAGINATION ENTERTAINMENT )
LIMITED, et al.,          )
                          )
     Defendants.          )

## MEMORANDUM OPINION

Plaintiff George & Company, LLC ("George"), the manufacturer and seller of a dice game called "LCR," has sued defendants Imagination Entertainment Limited, Imagination Holdings Pty Ltd., and Imagination DVD, Inc. (collectively, "Imagination"), for trademark infringement in connection with Imagination's sale of a similar dice game, called "LEFT CENTER RIGHT." After completing discovery, George moved for partial summary judgment on the issue of liability, and Imagination has filed a motion for summary judgment on all issues. Oral argument was held and the motions were taken under advisement. For the reasons explained below, George's claims fail as a matter of law. Accordingly, summary judgment will be entered in Imagination's favor.

## I. Background

The simple dice game at issue is generic, and neither party claims any intellectual property in the game itself.[1] Since the

---

[1] Under the rules of the game, at least three players are required. Each player starts with three chips and takes turns

early 1980s, George has marketed and sold its version of the game under the name "LCR." George owns registered trademarks for LCR (Reg. No. 2,989,658) and a related image, the LCR Rolling-Dice Design (Reg. No. 2,802,321), pictured here:



Both of these marks are registered for use in dice games, party games, and board games featuring specially marked dice and chips.

In addition to owning the registered marks, George asserts in this litigation that it also owns a common law trademark for LEFT CENTER RIGHT, although that mark does not appear on any of George's products and George has never applied to register the mark. In support of this assertion, George cites its use of two other unregistered marks, which George also claims to own under common law. The first is a tagline, "Left, Center or Right — Don't lose your chips!" ("Tagline"), which is visible on one of George's products in the following picture:

---

rolling three specially-marked dice (alternately marked with "L," "C," "R," or a dot). The dice indicate whether the roller keeps his or her chips (a player would keep one chip for each dot rolled), passes some to a player on the left (one chip per "L") or right ("R"), or places some chips in a center pot ("C"). Players gain and lose chips as the game progresses, while the number of chips in the center pot slowly increases. The game ends when only one player has any chips remaining. That player wins the game and is awarded the chips from the center.



The second is a design, the "Left! Center! Right! Dice, Chips & Arrows design" ("Arrows Design"), which is visible in the above picture and also shown here:



George argues that its use of these two marks, which it calls "LEFT CENTER RIGHT-formative marks," bolsters its claim of common law ownership of LEFT CENTER RIGHT.

In addition to citing its use of the two unregistered, "formative" marks, George argues that its common law rights in LEFT CENTER RIGHT arise from the public's use of the words "left center right" to refer to George's product and from George's own

use of "left center right" verbally and on earlier packaging.[2]

In 2006, Imagination began selling its version of the dice game, which it calls "LEFT CENTER RIGHT."[3]  A version of Imagination's use of that name is pictured below:



In response to Imagination's use of LEFT CENTER RIGHT on its dice game, George brought this action, asserting that Imagination has infringed on George's registered and unregistered marks.[4]

---

[2]  According to Peter Smilanich, George's current owner, George sold its game as "LEFT CENTER RIGHT" between 1983 and 1992.  Aside from Smilanich's declaration and deposition testimony, there is no evidence in the record, such as copies of packaging, photographs, advertisements, or invoices, to support this claim.  It is undisputed that, since at least 1992, George has not used the words "left center right" alone anywhere on its products.

[3]  Although the name of Imagination's game actually appears as "LeFT CeNTeR RIGHT," this opinion, consistent with the parties' pleadings, will refer to the mark at issue as simply LEFT CENTER RIGHT.

[4]  George's Complaint, which seeks declaratory, injunctive, and monetary relief, includes six separate but related claims: (1) Federal Trademark Infringement Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) Federal Trademark Infringement, False Designation of Origin, Passing Off, and

## II. Standard of Review and Applicable Law

Summary judgment is appropriate if there is no genuine issue
as to any material fact and the moving party is entitled to
judgment as a matter of law. Fed. R. Civ. P. 56(c), <u>Celotex
Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). In ruling on a
motion for summary judgment, the Court views the evidence in the
light most favorable to the non-moving party. <u>Anderson v.
Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). Summary judgment
is as appropriate in a trademark case as in any other case and
should be granted or denied on the same principles. <u>See</u>
<u>Synergistic Int'l, LLC v. Korman</u>, 470 F.3d 162, 170 (4th Cir.
2006).

To overcome summary judgment, the non-moving party must,
beyond the pleadings and mere allegations, "set out specific
facts showing a genuine issue for trial." Fed. R. Civ. P.
56(e)(2); <u>see</u> <u>also</u> <u>Celotex</u>, 477 U.S. at 324. Furthermore, the
non-moving party cannot successfully survive summary judgment by
establishing "[t]he mere existence of a scintilla of evidence in
support" of the party's position; to the contrary, the party must
put forth "evidence on which the jury could reasonably find [for

---

Unfair Competition Under Section 43(a)(1)(A) of the Lanham Act,
15 U.S.C. § 1125(a)(1)(A); (3) Cybersquatting Under Section 43(d)
of the Lanham Act, 15 U.S.C. § 1125(d); (4) Unfair Competition
Under Virginia Stat. Ann. § 59.1-196 <u>et</u> <u>seq.</u>; (5) Trademark
Infringement and Unfair Competition Under Virginia Common Law;
and (6) Misappropriation Under Virginia Common Law.

that party]." <u>Liberty Lobby</u>, 477 U.S. at 252; <u>Ash v. United</u>
<u>Parcel Serv., Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1986).

III. <u>Analysis</u>

At the heart of this action are two claims: (1) that
Imagination's use of LEFT CENTER RIGHT infringes on George's
registered LCR trademark and (2) that Imagination's use of LEFT
CENTER RIGHT infringes on George's common law rights in LEFT
CENTER RIGHT.[5]

To demonstrate infringement, whether under the Lanham Act or
under Virginia common law, a plaintiff must demonstrate (1) its
ownership of a valid, protectable trademark and (2) a likelihood
of confusion created by the defendant's use of a reproduction,

---

[5] George clarified its theories of infringement most
recently in its Reply to Defendants' Opposition to Plaintiff's
Motion for Partial Summary Judgment on Liability:

> To recap, George's trademark infringement and related
> claims in this lawsuit are based on: (1) George's
> federally registered LCR mark . . ., (2) George's
> common-law rights in LEFT CENTER RIGHT based on the
> <u>public's</u> interchangeable use of LCR and LEFT CENTER
> RIGHT to identify George's game, and (3) George's
> common-law rights based on its <u>own</u> use of the LEFT
> CENTER RIGHT-formative tagline and design on its
> packaging and promotional materials for 15 years, and
> George's <u>own</u> use of LEFT CENTER RIGHT verbally for
> decades and on early packaging (from 1983-1991).

Pl.'s Reply 3 (Docket #139) (emphasis in original). George
appears to have abandoned any claim that Imagination has
infringed on George's LCR mark through means other than
Imagination's use of LEFT CENTER RIGHT. Similarly, George
appears to have abandoned any claim that Imagination has
infringed on George's LCR Rolling-Dice Design or on any rights
George may have in the Tagline or Arrows Design.

counterfeit, copy, or colorable imitation of that mark.  15

U.S.C. §§ 1114(1), 1125(a)(1)(A); <u>Carefirst of Md., Inc. v.</u>

<u>First Care, P.C.</u>, 434 F.3d 263, 267 (4th Cir. 2006); <u>Lone Star</u>

<u>Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.</u>, 43 F.3d 922, 930

n.10 (4th Cir. 1995).

    <u>A.</u>   <u>Alleged Infringement of Registered LCR Mark</u>

Imagination does not dispute that LCR is a valid,

protectable mark owned by George.  The disputed issue is whether

Imagination's use of LEFT CENTER RIGHT creates a likelihood of

confusion with George's use of LCR.  This inquiry is inherently

factual.  <u>Lone Star</u>, 43 F.3d at 933.  However, "if, based on the

undisputed facts in the summary judgment record, no reasonable

jury could find a likelihood of confusion, summary judgment is

appropriate."  <u>Renaissance Greeting Cards, Inc. v. Dollar Tree</u>

<u>Stores, Inc.</u>, 405 F. Supp. 2d. 680, 690 (E.D. Va. 2005).

The Fourth Circuit has identified numerous factors to be

considered when determining whether a likelihood of confusion

exists:

    (1) the strength or distinctiveness of plaintiff's
    mark;
    (2) the similarity of the two marks;
    (3) the similarity of the goods that the marks
    identify;
    (4) the similarity of the facilities the parties use;
    (5) the similarity of the advertising;
    (6) the defendant's intent;
    (7) actual confusion;
    (8) the quality of the defendant's product; and
    (9) the sophistication of the consuming public.

*Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir.
1984); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463-64
(4th Cir. 1996) (identifying factors eight and nine).  Not all
factors carry equal significance, nor do all factors necessarily
apply in every case.  *Pizzeria Uno*, 747 F.2d at 1527.

    Before addressing these factors, it is worth noting that
George has not presented any survey evidence of consumer
confusion.  Although surveys are not required to prove likelihood
of confusion, they are increasingly common.  *Tools USA & Equip.
Co. v. Champ Frame Straightening Equip., Inc.*, 87 F.3d 654, 661
(4th Cir. 1996) ("[S]urveys are not required to prove likelihood
of confusion."); J. Thomas McCarthy, *McCarthy on Trademarks and
Unfair Competition* § 32:195 ("As the use of surveys has become
more common, judges have come to expect that a survey will be
introduced to aid the court in determining customers' state of
mind.").  Given that George bears the ultimate burden of proving
a likelihood of confusion by a preponderance of the evidence, the
lack of survey evidence, while not fatal, severely hampers
George's ability to meet that burden.

        1.   Factors Favoring George

    The first likelihood of confusion factor focuses on the
strength of the mark at issue.  The strength of a mark depends on
its inherent distinctiveness, which reflects "conceptual
strength," and its recognition in the marketplace, which reflects

8

"commercial strength."  <u>Rennaissance</u>, 405 F. Supp. 2d at 690.

With respect to distinctiveness, trademark law recognizes four categories of marks: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful.  The basis for, and significance of, these designations is well established:

> At the most distinctive end of the spectrum are <u>arbitrary or fanciful</u> marks, such as KODAK or XEROX, which are meaningless outside of the product they brand and therefore entitled to the strongest form of protection.  At the least distinctive end of the spectrum are <u>generic</u> marks, which simply convey information with respect to the nature and class of the article, and are therefore, never entitled to trademark protection.  In between these two poles are suggestive and descriptive marks. <u>Suggestive</u> marks, such as COPPERTONE, or PLAYBOY, are meant to project a favorable or idealistic image with which a prospective user might identify but do not suggest a particular product or service. <u>Descriptive</u> marks, such as AFTER-TAN post tanning lotion, or 5 MINUTE GLUE, merely describe a function, use, characteristic, size, or intended purpose of the product, and are entitled to protection only if they have developed "secondary meaning" in the marketplace such that consumers have come to associate the mark with that particular product.

<u>Id.</u> at 688-89 (internal citations and quotation marks omitted) (emphasis added).

George asserts that LCR is "suggestive," and Imagination does not dispute this claim.  George's assertion is supported by the Patent and Trademark Office's (PTO) registration of LCR on the Principal Register, which is reserved for inherently distinctive marks.  Only arbitrary, fanciful, and suggestive marks are considered inherently distinctive. <u>See Sara Lee</u>, 81

9

F.3d at 464, 465 n.12 (citing <u>Pizzaria Uno</u>, 747 F.2d at 1529).
The Fourth Circuit has held that "a district court should not
freely substitute its opinion for that of the PTO because a
decision to register a mark, without requiring evidence of
secondary meaning, is powerful evidence that the registered mark
is suggestive and not merely descriptive." <u>U.S. Search, LLC v.</u>
<u>U.S. Search.com Inc.</u>, 300 F.3d 517, 524 (4th Cir. 2002).  With no
evidence to rebut such powerful evidence, LCR must be considered
suggestive and therefore highly distinctive and conceptually
strong.  <u>Sara Lee</u>, 81 F.3d at 464-65.

It is also undisputed that George's game, using the
distinctive LCR mark, is marketed and sold throughout the United
States via distributors, retailers, trade shows, and various
Internet websites, and that George's product has received some
national media attention, including a feature on the nationally
televised <u>Rachel Ray Show</u>.  These facts support LCR's
"commercial" strength, which adds to the overall strength and
distinctiveness of LCR.  <u>See</u> <u>Renaissance</u>, 405 F. Supp. 2d at 692-
93 (analyzing factors relevant to commercial strength).

With respect to the third factor (similarity of goods),
there is no dispute that the parties' products are nearly
identical.  This factor therefore weighs in George's favor.
Because the parties' games compete in overlapping markets, the
fourth factor (similarity of facilities) and fifth factor

10

(similarity of advertising) factors also weigh in George's favor. And, lastly, the ninth factor (sophistication of the consuming public) weighs in George's favor, because the games are inexpensive and are not items that consumers would be expected to study closely before purchasing.

### 2.   Factors Favoring Imagination

Although the above factors support George's claim of infringement, they are significantly outweighed by other factors. With respect to the second factor (similarity of the marks), George's claim is severely weakened by the utter dissimilarity between LCR and LEFT CENTER RIGHT.  Because the products at issue are directly competitive, the degree of similarity required to prove a likelihood of confusion is lessened.  <u>Century 21 Real Estate Corp. v. Century Life of America</u>, 970 F.2d 874, 877 (Fed. Cir. 1992).  Nonetheless, comparison of the marks' "sound, sight, and meaning" shows that George cannot possibly meet even this lowered standard.  <u>See</u> <u>McCarthy</u> § 23:21 (discussing "sound, sight, and meaning" trilogy and citing cases).  In sight and sound, there is no similarity, even in the context of the games. LCR consists of three capital letters.  LEFT CENTER RIGHT is three words.  The marks do not look alike, and they do not sound alike.  The issue of "meaning," however, requires further analysis.

In an effort to establish the similarity of the two marks

11

based on their meaning, George maintains that LCR is an acronym based on the initial letters of "left," "center," and "right." From this basis, George argues that LCR and LEFT CENTER RIGHT have the same meaning and are therefore confusingly similar. George's argument, however, is contradicted by its earlier claim about the strength of its own mark.  Indeed, George has argued that LCR is a strong, valid, and protectable mark precisely because it is considered suggestive.  If the mark is suggestive, it follows that "some imagination [is] necessary in order to deduce" that LCR is associated with the words "left," "center," and "right."  Korman, 470 F.3d at 172 (4th Cir. 2006).  In other words, LCR's suggestive status implies some distance between the meaning, if any, of LCR and the meaning of LEFT CENTER RIGHT. See McCarthy § 11:32 ("[I]f [an] abbreviation is so fanciful that it will not be recognized as merely a shortened form of the original descriptive word[s], then it is not descriptive.").

From George's position and the PTO's conclusion that LCR is suggestive, it follows that LCR is sufficiently fanciful that it would not be recognized as merely a shortened form of LEFT CENTER RIGHT, even in the context of the game.  This conclusion weakens any claim by George that the marks are confusingly similar based on their meanings.[6]

---

[6] The Court also finds no support for George's claim that LCR, as an acronym for LEFT CENTER RIGHT, might create "reverse confusion," in which a "junior user's advertising and promotion

Moreover, George has not cited, and the Court cannot find, any source of authority for the conclusion that the marks at issue are confusingly similar based on their "shared meaning." George relies primarily on an unpublished Arizona district court opinion, which found that two marks, "Arizona Opera" and "AZ Opera," were confusingly similar based, in part, on their shared meaning. See Arizona Opera Co. v. AZ Opera Co., No. 06-988, 2006 U.S. Dist. LEXIS 48938, at *11 (D. Ariz. July 14, 2006). In that case, however, the district court's finding of similarity had additional support:

> The two marks, Arizona Opera and AZ Opera, visually appear very similar. The only difference between the two marks is that Defendant uses the abbreviation for Arizona, rather than the actual word. When the two marks are said aloud, they sound identical if the abbreviation for Arizona is spoken as the word for which it stands. Additionally, "Arizona" and "AZ" have the same meaning. Due to the great degree of similarity between the two marks, confusion is likely to result.

Id. The Arizona case is easily distinguished from this action, because "AZ," as the governmentally designated postal abbreviation for Arizona, is a clear, well-known abbreviation for "Arizona" in any context. By contrast, LCR has no obvious

---

so swamps the senior user's reputation in the market that consumers are likely to be confused into thinking that the senior user's goods are those of the junior user." McCarthy § 23:10. Because this Court finds no likelihood of confusion between the marks, it is clear that no such claim could succeed here. See id. (proof of likelihood of confusion is still needed in reverse confusion claim).

meaning that might be compared to the meaning of LEFT CENTER
RIGHT.  Considered alone, LCR is merely three capital letters.
Only in the context of the dice game do the letters "l," "c," and
"r" even begin to be associated with the words "left," "center,"
and "right."  However, as discussed above, even in the context of
the game, a consumer must still use some imagination, if not
investigate the game itself, before identifying any meaning in
LCR.  This fact undercuts George's claim that the marks should be
considered similar based on a shared meaning.

    The only other case cited in George's opening brief with
respect to similarity is also distinguishable.  George cites
Purolator, Inc. v. EFRA Distributors, Inc., 687 F.2d 554, 560
(1st Cir. 1982) (affirming the district court), for the
proposition that similarity may be found where one term is an
abbreviation of another.  In Purolator, the district court found
that "Puro," the accused mark, infringed "Purolator," the
protected mark, on the basis of the clear "phonetic and visual
identity of defendants' and plaintiff's trademarks" and a "direct
association by the public and the industry generally of the root
word Puro with Purolator products."  Purolator, Inc. v. EFRA
Distributors, Inc., 524 F. Supp. 471, 476 (D. Puerto Rico 1981).
In addition, the district court stated that, "[a]side from such
general usage, . . . the dominant part of the Purolator mark is
the word Puro which has been adopted by defendants as the first

14

word of their composite mark Puro Filter." Id. None of these
factors, which supported a finding of similarity in Purolator,
are present in this action.[7] Because LCR and LEFT CENTER RIGHT
do not look alike, sound alike, or obviously have a shared
meaning, the second factor, similarity of the marks, weighs
heavily against George.

The seventh factor focuses on evidence of actual confusion,
which "is entitled to substantial weight as it provides the most
compelling evidence of likelihood of confusion." Lone Star, 43
F.3d at 937. However, "[t]he existence of some evidence of
instances of actual confusion does not necessarily prevent the
grant of a summary judgment of a dismissal for lack of a triable

_____

[7] Likewise, the three cases cited in George's reply brief
provide no support. Hancock v. American Steel & Wire Co. Of
N.J., 203 F.2d 737 (C.C.P.A. 1953) involved an appeal from a
decision by the PTO not to register a trademark "Tornado" for use
with respect to wire mesh fencing, in light of a registered
trademark for "Cyclone" for the same product. A finding of
similarity in that case was based, primarily, on the dictionary
definitions of the terms, which are equivalent regardless of
their context. As such, the terms were found to be confusingly
similar within the specific context of wire mesh fencing. Id.
Similar reasoning guided the preliminary injunction decisions in
Kraft-Phenix Cheese Corp. v. R.E. Robinson, Inc., 9 F. Supp. 125
(E.D. Mich. 1934), which involved a comparison between "Miracle
Whip" and "Wonder Mix" for use with salad dressing, and American
Technical Industries, Inc. v. General Foam Plastics Corp., 200
U.S.P.Q. 244 (S.D.N.Y. 1978), which involved a comparison between
"Mountain-King" and "Alpine Emperor" for use with artificial
Christmas trees. As discussed above, LCR has no meaning outside
of the context of the game, and any meaning within the context of
the dice game is significantly more subtle than the obvious
meaning of the terms in the cases cited by George. The reasoning
of these cases, therefore, does not extend to this action.

issue of a likelihood of confusion." McCarthy § 23:13; see also Wordsmith Publ'g Co. v. Meredith Corp., 904 F.2d 1244, 1249 (8th Cir. 1990). Evidence of a very limited scope may be dismissed as de minimis. Petro Stopping Centers, L.P. v. James River Petroleum, Inc., 130 F.3d 88, 95 (4th Cir. 1997); see also McCarthy § 23:13.

The only evidence George presented of actual confusion in the summary judgment pleadings was the the deposition testimony of a store owner, Corrine Harrison, and a toy company manager, Melissa Fortunato, who stated their belief that George had licensed its game to Imagination after seeing the competing products. Harrison's belief was based on seeing Imagination's game in a catalog and at a toy fair. She ordered Imagination's game believing it was licensed by George. Fortunato, on the other hand, wished to obtain a license from George to create her own version of the game, but George had denied her request. Upon seeing Imagination's game in a catalog and believing it was a licensed version, she contacted George because she was upset that George had licensed the product to another company.

After the summary judgment motions were taken under advisement, George twice moved for leave to file additional evidence of actual confusion.[8] In the first of these motions,

---

[8] See plaintiff's Motion for Leave to File Evidence of Newly Occurring/Discovered Actual Confusion [Docket #151] and Motion for Leave [Docket #157].

George presented a declaration of Sharon Lynch, a sales associate at a George & Company retail store. According to Lynch, an unidentified customer told Lynch that Toys R Us was selling a more expensive version of George's game. Based on this conversation, Lynch believed, incorrectly, that George had created a new version of the game. Lynch also declares that customers have referred to George's game as LCR and LEFT CENTER RIGHT for many years.

In its second motion, George submitted a declaration by Jill Smilanich, George's office manager, in which Smilanich describes a phone call from an unidentified caller who had purchased Imagination's product but mistakenly believed she had purchased George's. Accordingly to Smilanich, the caller complained about the product and, when she realized that George did not make the game she had purchased, she became upset and indicated that she would have never bought the game if she had known it was not made by George.

Imagination has contested George's evidence, correctly arguing that much of it contains inadmissable hearsay. See Md. Highways Contractors Ass'n v. Md., 933 F.2d 1246, 1251 (4th Cir. 1999) (hearsay evidence that would be inadmissible at trial cannot be considered on a motion for summary judgment). However, even if this evidence were admissible, the proof of actual confusion is de minimis. Accordingly, this factor does not weigh

17

in George's favor.

As to the sixth factor, intent, George emphasizes that Imagination was aware of George's product, purchased it, and even used it as a reference in devising its own game. These facts alone, however, are not evidence of bad faith or intent to confuse. See McCarthy § 23:115 ("mere knowledge or awareness of the senior user's mark is not the same as an intent to confuse customers"). Moreover, the disimilarity of the marks at issue, as discussed above, provides an eminently reasonable basis for Imagination to have believed that George's ownership of its mark, LCR, did not preclude Imagination from using LEFT CENTER RIGHT. See Renaissance, 405 F. Supp. 2d at 697 (finding no bad faith where defendant "had a reasonable basis to continue to market its gift bags under the RENNAISSANCE mark because it had a good faith belief that RGC's mark is not strong enough to preclude others from using the RENAISSANCE mark for related goods"). Lastly, beyond the dissimilarity of the marks, the disimilarity in the overall packaging of the parties' products also weighs against a finding of bad faith or an intent to confuse. Specifically, Imagination has distinguished its products from those of George, not only by using a different name, but also by using packaging that is significantly different in shape, size, color, and content. These facts undercut George's argument concerning Imagination's intent.

The eighth factor addresses the quality of the accused product. This factor has no relevance to this case because it applies "in situations involving the production of cheap copies or knockoffs." Sara Lee, 81 F.3d at 467. To the contrary, the record shows that Imagination's products are priced at or above the prices of George's products, and are in no respect cheap copies or knockoffs.

In sum, although some of the likelihood of confusion factors weigh in George's favor, these factors are so significantly outweighed by the lack of similarity between the marks at issue and the paucity of evidence showing actual confusion that summary judgment will be granted in Imagination's favor on the statutory trademark infringement claims.

B.  Alleged Infringement of George's rights in LEFT CENTER RIGHT

George alleges that it has common law rights in the unregistered mark, LEFT CENTER RIGHT, and that Imagination's use of that mark constitutes infringement. Imagination counters with the argument that LEFT CENTER RIGHT is not a valid, protectable mark and, even assuming validity, is not owned by George.

1.  Validity

A plaintiff who alleges infringement of an unregistered mark bears the burden of demonstrating that the unregistered mark is valid and entitled to protection. Teaching Co. v. Unapix Entm't, Inc., 87 F. Supp. 2d, 567, 575 (E.D. Va. 2000). A mark is valid

19

if (1) it is inherently distinctive or (2) it has acquired secondary meaning.  Id.  Secondary meaning is defined as the consuming public's understanding that a mark, when used in context, "refers, not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify."  Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 125 (4th Cir. 1990).  George cannot demonstrate that LEFT CENTER RIGHT is either inherently distinctive or has acquired secondary meaning.

In developing its version of the game, Imagination applied to register LEFT CENTER RIGHT as a trademark on January 30, 2006. On July 17, 2006, the PTO refused to register the LEFT CENTER RIGHT mark, after determining that the words were merely descriptive.  Imagination sought reconsideration of this decision, but the PTO reaffirmed its conclusion.  However, the PTO recently accepted Imagination's amendment to the Supplemental Register, which is reserved for marks capable of distinctiveness. This action means that, although the PTO has rejected registration of LEFT CENTER RIGHT, it has indicated that the mark could, in the future, become protectable.

Nothing in the record undermines the PTO's determination that LEFT CENTER RIGHT is merely descriptive and not inherently distinctive.  George must therefore show that the mark has acquired secondary meaning to establish its validity.  Boston

Beer Co. v. Slesar Brewing Co., 9 F.3d 175, 181 (1st Cir. 1993).[9]
As discussed above, George has failed to put forth competent
evidence of sufficient consumer use of "LEFT CENTER RIGHT" to
identify its product and, therefore, cannot meet its burden of
demonstrating the validity of LEFT CENTER RIGHT as a protectable
mark.[10]   On this ground alone, George's common law claims fail.

> 2.   Ownership

Even if LEFT CENTER RIGHT were a valid mark, it is clear
from the evidence in the record that George has not established
ownership of the mark.   In presenting its argument for ownership,
George cites the following: (1) its own use of the mark on its
products between 1983 and 1992; (2) verbal use of the mark, by
George and others; (3) the public's use of the mark; (4) George's
use of LCR; and (5) George's use of other unregistered marks,
which George claims to own under common law and which George
argues are "formed" from LEFT CENTER RIGHT.   None of these
factors establish George's ownership of LEFT CENTER RIGHT.

To qualify as a trademark, there must be an "actual adoption
and use of the symbol as a mark by a manufacturer or seller of
goods or services."   McCarthy § 3:1.   The undisputed facts in

---

[9]   "Secondary meaning exists if in fact a substantial number
of present or prospective customers understand the designation
when used in connection with a business to refer to a particular
person or business enterprise."   Perini, 915 F.2d at 125.

[10]   Most of the de minimis evidence of actual confusion
presented by George includes inadmissible hearsay.

this case demonstrate that George has failed to meet this threshold requirement.  Although George alleges that it used LEFT CENTER RIGHT on its product between 1983 and 1992, the only support for this claim is George's owner's uncorroborated declaration and deposition testimony.  George has not offered any other evidence such as copies of packaging, photographs of the product, advertisements, or invoices showing such use.  Moreover, even if George had made prior use of LEFT CENTER RIGHT, George does not currently use LEFT CENTER RIGHT to mark its products and has not used it in more than fifteen years.  The failure to use the mark for such a long time is fatal to George's argument.  <u>See Emergency One, Inc. v. American FireEagle, Ltd.</u>, 228 F.3d 531, 536 (4th Cir. 2000) (holding that three consecutive years of non-use of a mark creates a presumption of abandonment).

Likewise, George's argument that it has acquired rights to the mark through its own "verbal" use of the mark has no legal or factual support.  Aside from a declaration by George's president made after Imagination filed its summary judgment motion, George has presented no evidence of "verbal" use.  More importantly, however, George has provided no legal authority for the proposition that its own verbal use of the words "left center right" can support a claim for ownership of LEFT CENTER RIGHT, absent actual use of the mark on one's products.

George's argument that it has acquired rights through the

22

public's use of LEFT CENTER RIGHT is also unpersuasive.  Common
law trademark rights may attach when a form of a name is publicly
and exclusively associated with a trademark owner.  In most
instances, however, a party asserting such rights has also used
the mark.  In those cases where parties have found support for
their claims of ownership through public use alone, the mark at
issue has been an abbreviation, acronym, or shortened version of
a mark already owned.  See McCarthy § 7:18.  Indeed, the
rationale for recognizing rights under the public use theory is
rooted in the public's inclination to shorten words or phrases —
not to expand them.  See id.; see also Pan American Worldwide
Airways, Inc. v. Panamerican School of Travel, Inc., 648 F. Supp.
1026 (S.D.N.Y. 1986) (holding that ownership of "Pan Am" did not
imply ownership of the elongated version, "Pan American").

     George argues that this logic should apply in reverse — that
it is possible for George to acquire rights in the elongated
mark, LEFT CENTER RIGHT, based on the public's expansion of LCR.
The case law suggests that rights can only attach through public
use when the public abbreviates a trademarked name and the
trademark owner thereby acquires rights in the abbreviation.
George owns the acronym, LCR, not an expanded version.  Thus,
George's public use argument fails.

     Finally, George attempts to use its purported ownership of
"the formative marks" to support its claim of ownership of LEFT

                              23

CENTER RIGHT.  However, George cannot even demonstrate ownership
in the formative marks themselves.  The "Left, Center or Right —
Don't lose your chips!" Tagline is merely a description of how to
play the game, and the Arrow Design is merely an image of the
game being played.  There is no evidence in the record to support
George's claim that it uses either the Tagline or Arrows Design
as a mark.  Therefore neither is capable of trademark protection,
and neither formative mark supports George's claim of ownership
of LEFT CENTER RIGHT.[11]

    C.   Infringement on Other Marks and Cybersquatting Claims

As discussed above, George appears to have abandoned any
theory or claim that Imagination has infringed on the Tagline or
the Arrows Design.  These claims would fail, however, even if
pursued by George.

Imagination has repeatedly objected to the Court's
consideration of the Arrows Design in this action, arguing that
George does not allege ownership of the Arrows Design in its
Second Amended Complaint.  Imagination correctly describes the
scope of the Second Amended Complaint.  Nonetheless, even if

---

[11]   This conclusion is supported by the PTO's decisions of
July 2, 2007, denying George's applications to register both of
the formative marks.  In declining the applications, the PTO
referenced Imagination's earlier-filed application to register
"LEFT CENTER RIGHT," and stated that, if Imagination's
application matured into a registration, the PTO would refuse
registration of George's formative marks under 15 U.S.C. §
1052(d), based on likelihood of confusion.

George had included a claim that Imagination had infringed the Arrows Design, the claim would fail because George has not established the validity of the Arrows Design as a protectable mark, whether through inherent distinctiveness or through secondary meaning.  Moreover, George has not established that it uses the Arrows Design as a mark.[12]  Absent validity and use of the design as a mark, George cannot establish that it has ownership rights in the Arrows Design; accordingly, there is no merit to its claim that Imagination has infringed that design, even though the design appears on George's products.

For the same reasons, any claim that Imagination has infringed on the "Left, Center or Right — Don't lose your chips!" Tagline would also fail.  The Tagline is equally, if not more, descriptive than LEFT CENTER RIGHT.  George has not presented any evidence that the Tagline has acquired secondary meaning, nor has George established that it uses the Tagline as a mark.  For these reasons, the Tagline is not a valid mark and, even if it were, George has not established ownership of it.

Finally, George's claim that Imagination's use of two domain

---

[12]  "Not every single word, phrase, design or picture that appears on a label or in an advertisement qualifies as a protectable mark or trade dress.  Rather, to create trademark or trade dress rights, a designation must be proven to perform the job of identification: to identify one source and distinguish it from other sources.  If it does not do this, then it is not protectable as a trademark, service mark, trade dress or any similar exclusive right."  McCarthy § 3:3.

names, leftcenterrightdice.com and leftcenterrightgame.com, constitutes cybersquating fails as a matter of law.  To establish cybersquatting, George must establish bad faith use of a domain name that, in the case of a purportedly distinctive mark, is identical or confusingly similar to that mark.  15 U.S.C. § 1125(d)(1)(A); Venetian Casino Resort, LLC v. VenetianGold.com, 380 F. Supp. 2d 737, 740 (E.D. Va. 2005).  In the context of cybersquatting, "confusing similarity" means that "the plaintiff's mark and the defendant's domain name are so similar in sight, sound and meaning that they could be confused." Venetian Casino, 380 F. Supp. 2d at 743; see also McCarthy § 25:78.  As discussed above, George has failed to establish that LEFT CENTER RIGHT is a valid trademark and that it has any ownership of those words.  Therefore, George cannot make out a prima facie case of cybersquatting.

IV.  Conclusion

For the reasons stated in this Memorandum Opinion, Imagination's Motion for Summary Judgment will be granted and George's Motion for Partial Summary Judgment on Liability will be denied by an Order to be issued with this Memorandum Opinion.

Entered this 25th day of July, 2008.

_____/s/_____
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

26